**Wendell B. IDDINGS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 06A04–0107–CR–286.**

Court of Appeals of Indiana.

Aug. 12, 2002.

Deborah K. Smith, Martin & Smith Thorntown, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Wendell Iddings appeals his convictions and sentences for two counts of dealing in a schedule II controlled substance by delivery, dealing in a schedule II controlled substance by manufacturing, unlawful possession of a firearm by a serious violent felon, dealing in a sawed off shotgun, and possession of chemical precursors with intent to manufacture methamphetamine.[1] We affirm.

### Issues

We restate the issues before us as:

I. whether the trial court properly denied Iddings' motion to suppress evidence recovered pursuant to a search warrant issued for his residence and garage;

II. whether the trial court erred in permitting the State to introduce into evidence and play for the jury an audiotape of an alleged controlled buy at Iddings' house;

III. whether there is sufficient evidence that Iddings possessed a sawed off shotgun and chemical precursors of methamphetamine;

IV. whether Iddings' conviction for possession of chemical precursors with intent to manufacture methamphetamine is a lesser included offense of dealing in methamphetamine by manufacturing and must be vacated; and

V. whether Iddings' forty-eight year executed sentence is manifestly unreasonable.

### Facts

The evidence most favorable to the convictions and the trial court's rulings reveals that on April 28, 2000, police stopped and detained Gary Allen as part of an ongoing investigation after Allen left a residence where drug dealing and manufacturing was suspected to be occurring. Police discovered a substantial quantity of drugs and firearms in Allen's vehicle. Boone County Sheriff's Detective Albert Hendrix told Allen that he would not be placed under arrest and taken to jail at that time if he agreed to work with law enforcement as a confidential informant. Allen did so and mentioned Iddings as a manufacturer and dealer of methamphetamine.

Police arranged for Allen to make a controlled buy of methamphetamine at Iddings' residence on May 1, 2000. Allen and his vehicle were searched before he went to the residence and he was given $100 and outfitted with a Kel–Set transmitting device. Allen did not immediately seek to complete the drug purchase when he arrived at Iddings' home. Instead, Allen, who until recently had lived with Id-

---

1. Iddings was also convicted of maintaining a common nuisance. Although the trial court entered judgment of conviction on this count, its sentencing order contains no sentence for it.

dings, spent much time repairing his car, which had overheated on his way to the residence. He worked out of a detached garage where he had told police the methamphetamine cooking took place. He also engaged in conversation both related and unrelated to drugs with Iddings. It is impossible to discern from the Kel–Set recording alone whether Iddings agreed to sell methamphetamine to Allen. Allen did ask to purchase a gram of the drug from Iddings, however, and shortly afterwards he left the residence and met with police at a prearranged location. Allen and his vehicle were again searched and he gave what turned out to be a quantity of methamphetamine and $50 to police, telling them he had purchased the drug from Iddings for $50.

After these events, police sought a search warrant for Iddings' residence and the garage, and one was issued for both following a probable cause hearing held on May 2, 2000. Before executing the warrant, however, police asked Allen to make another attempt to purchase methamphetamine from Iddings. He did so on May 3, 2000, although he was not wearing a Kel–Set transmitter on this occasion because of Iddings' asking Allen during the previous encounter on May 1 whether he was wearing a wire. According to Allen's testimony, however, Iddings did not sell methamphetamine to Allen on this occasion, but instead simply gave the drug to Allen without Allen directly asking for it. On May 5, 2000, police executed the search warrant for Iddings' residence. Inside the house, police recovered several firearms, including a sawed off shotgun. Primarily in the garage, police found extensive evidence of a methamphetamine lab, including what was later revealed to be the drug itself and large amounts of chemicals and other items associated with methamphetamine manufacturing, such as approximately thirty boxes of pseudoephedrine tablets, lithi-

um batteries, coffee filters, over sixty cans of engine starting fluid, denatured alcohol, and soda pop bottles with tubes coming out of them that appeared to be hydrogen chloride gas converters.

The State charged Iddings with three counts of dealing methamphetamine, Class B felonies. Two of the counts were based upon the alleged deliveries to Allen and one was based upon manufacturing of the drug. Iddings was also charged with possession of a firearm by a serious violent felon, a Class B felony, because of a 1979 conviction for armed robbery. Iddings was further charged with dealing in a sawed off shotgun, possession of methamphetamine chemical precursors with intent to manufacture the drug, and maintaining a common nuisance, all Class D felonies. Iddings filed a motion to suppress all of the evidence recovered pursuant to the search warrant; the trial court denied the motion.

After a jury trial conducted on January 9–12, 2001, Iddings was convicted of all counts. The trial court imposed sentence as follows: fifteen years for each of the four Class B felonies and three years for the sawed off shotgun and chemical precursors convictions. The dealing by delivery counts were to be served concurrently with each other, the dealing by manufacturing count was to be served concurrently with the chemical precursors count but consecutive to the dealing by delivery counts, and the serious violent felon and sawed off shotgun counts were to be served consecutively to each other and the other counts. The net result is an executed sentence totaling forty-eight years. Iddings now appeals.

### Analysis

#### I. Denial of Motion to Suppress

Iddings first argues that the trial court improperly denied his motion to sup-

press, claiming the issuance of the search warrant was based on unreliable hearsay and an inadequate controlled buy. Reviewing courts, which include both the trial court ruling on a motion to suppress evidence and the appellate court reviewing that decision, are to focus on whether a "substantial basis" existed for a warrant authorizing a search or seizure, and doubtful cases are to be resolved in favor of upholding the warrant. *Rios v. State,* 762 N.E.2d 153, 156 (Ind.Ct.App.2002) (citing *Houser v. State,* 678 N.E.2d 95, 98 (Ind. 1997)). We review the trial court's "substantial basis" determination de novo, but give significant deference to the probable cause determination of the magistrate who initially issued the search warrant, focusing on whether reasonable inferences drawn from the totality of the evidence support the determination. *Id.* "A presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption." *Id.* at 157 (quoting *Snyder v. State,* 460 N.E.2d 522, 529 (Ind.Ct.App.1984)).

We agree with Iddings that there are causes for concern regarding the May 1, 2000, "controlled buy," both in how it was executed and how Detective Hendrix related it to the judge who was asked to issue the search warrant for Iddings' residence. We have described the requirements of a controlled buy as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Methene v. State,* 720 N.E.2d 384, 389–90 (Ind.Ct.App.1999) (quoting *Flaherty v. State,* 443 N.E.2d 340, 341 (Ind.Ct.App. 1982)).

In the present case, Detective Hendrix testified at the search warrant probable cause hearing that Allen and his vehicle were searched before he drove to Iddings' residence, then:

> we watched him go into the residence. During that time, the Confidential Informant was wearing a wire, which is a piece of equipment used by Police Officers in Narcotics investigations to tape-record and be able to listen to any transaction that's being made while, while the Informant's in the residence. There was conversation inside the residence about firearms and Methamphetamine. It ended-up that the Informant purchased one gram of Methamphetamine, uh, and paid for it. I believe he paid $50.00 in U.S. Currency to Wendell Iddings.

App. p. 61. Detective Hendrix also testified that Allen and his vehicle were searched after he left Iddings' residence. There are several difficulties with this testimony. First, there is no indication that all entrances to the residence were closely monitored throughout the transaction, as required by *Methene* and *Flaherty.* Second, there is no indication that Allen went "directly" to the residence; rather, Allen spent much time working in and around a detached garage where he claimed to have previously made methamphetamine before entering the residence and asking to buy the drug from Iddings, which fact was not mentioned during the probable cause hearing.

 Third, Detective Hendrix' testimony is misleading in that it seems to

indicate that an agreement to sell methamphetamine by Iddings can be heard on the tape recording. We have listened to the tape and have discerned that no such agreement can be heard. At the hearing on the motion to suppress, Detective Hendrix admitted that he did not hear the sale of methamphetamine take place. In fact, Iddings was apparently reluctant to sell to Allen, as he was aware that Allen had been pulled over by police a few days before. On the tape, Iddings can be heard saying things in response to Allen's request to buy a gram of methamphetamine such as "are you wired? ... You know this carries a life sentence.... Why would anyone sell you a gram?"[2] State's Exhibit 89. Finally, Detective Hendrix testified that "we" saw Allen enter Iddings' residence. The use of a first-person pronoun indicates that he personally observed Allen enter the residence when, in fact, he testified in subsequent proceedings that he did not personally observe that occur, but other law enforcement officers did. Although it is true that probable cause may be based upon information known to the law enforcement organization as a whole, see *Rios*, 762 N.E.2d at 163, it clearly is the best practice for one filing a probable cause affidavit or testifying at a probable cause hearing to indicate what information was within the affiant's or witness' personal knowledge and what information was gathered from other law enforcement officials. There should be no shading of the truth in these sort of proceedings.

In spite of these concerns regarding the controlled buy and portions of Detective Hendrix' testimony, we do not conclude the judge issuing the search warrant lacked a "substantial basis" for believing probable cause existed that

contraband might be found at Iddings' residence. In response to the prosecutor's questions, Detective Hendrix testified that the confidential informant had "knowledge of Wendell Iddings being involved in the manufacture ... and sale of Methamphetamine," and that Allen said "that Mr. Iddings ... *and he* manufactured Methamphetamine at this location[.]" App. pp. 60, 63 (emphasis added). Iddings claims these hearsay statements by Allen lacked any indicia of reliability and, therefore, could not have supported a probable cause determination.

■ Uncorroborated hearsay from a source whose credibility is unknown cannot support a finding of probable cause to issue a search warrant. *Methene*, 720 N.E.2d at 388 (citing *Illinois v. Gates*, 462 U.S. 213, 227, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527, (1983)). This Fourth Amendment credibility requirement with respect to the use of informants to establish probable cause has been codified in Indiana Code Section 35–33–5–2(b), which provides that a probable cause affidavit based on hearsay must:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

*Methene*, 720 N.E.2d at 388.

Our supreme court has squarely held that "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Indiana Code Section 35–33–5–

---

**2.** The tape is not entirely audible. These are our approximations of what can be heard on the tape.

2(b)(1)." *Houser*, 678 N.E.2d at 100. In that case, the affidavit established the credibility of the source in part because the source's statements suggested a conspiracy between the source and the defendant to commit robbery. *Id.* This court likewise concluded in *Nash v. State*, 433 N.E.2d 807, 809–10 (Ind.Ct.App.1982), that hearsay from an anonymous informant was sufficiently reliable where it indicated that the informant admitted committing a burglary and delivering stolen items to the defendant's residence. We concluded there was substantial authority to support a determination that statements against penal interest are reliable indicia of credibility to sufficiently support a finding of probable cause:

> "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct."

*Id.* (quoting *United States v. Harris*, 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)).

Pursuant to this authority, we conclude that the hearsay statements of confidential informant Allen indicating that methamphetamine was manufactured at Iddings' residence were sufficiently reliable. Just as in *Houser* and *Nash*, Allen implicated himself in the commission of a crime, namely the manufacture of methamphetamine at Iddings' residence, thus providing a recognized basis for concluding that the confidential informant was a credible source and the information he provided was reliable. The fact that Allen may have been offered a "break" for providing this information is insufficient to undermine his credibility for the purpose of concluding that probable cause existed to search Iddings' residence, as *Nash* and *Harris* indicate. Giving significant deference to the judge who issued the search warrant, we conclude there was a substantial basis upon which to conclude there was probable cause to believe methamphetamine and evidence of methamphetamine dealing and manufacturing might be recovered at Iddings' residence. The trial court did not err in denying Iddings' motion to suppress.

### II. *Playing of Audiotape for Jury*

■ Iddings next contends the trial court erred in playing for the jury State's Exhibit 89, which is an audio recording of the May 1, 2000, controlled buy. He contends that the noncustodial recording does not meet the standard for admissibility of such recordings as set forth in *Kidd v. State*, 738 N.E.2d 1039 (Ind.2000), noting that the court reporter could not transcribe the tape because of its poor quality. Iddings did not object to the playing of this tape at trial, however. It is axiomatic that failing to object to the introduction of evidence waives appellate review of any claim of error in such introduction. *Johnson v. State*, 725 N.E.2d 864, 867 (Ind. 2000).

Iddings attempts to avoid waiver of this issue by claiming "it is unclear if counsel could have predicted the tape quality would be so poor that it could not be transcribed." Appellant's Br. p. 16. This claim is without merit. There is no contention that this audiotape was not made available to defense counsel by the State during the course of discovery. Further-

more, in reviewing the hearing on Iddings' motion to suppress, we find defense counsel made several comments indicating that he and Iddings had listened to the tape, including defense counsel asking Iddings, "[h]ave you listened to the tape with me previously," to which Iddings answered "Yes." Supp.App. p. 172. Although Iddings had different counsel at the time of trial, we have no reason to believe that subsequent counsel did not have the opportunity to listen to the tape prior to trial. We conclude Iddings has preserved nothing for our review on this issue.

### III. Sufficiency of the Evidence

■ Next, Iddings argues there was insufficient evidence that he possessed the sawed off shotgun and the chemical precursors of methamphetamine.[3] In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Love v. State,* 761 N.E.2d 806, 810 (Ind.2002). We look to the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ Iddings specifically argues that he was not found to be in actual possession of the shotgun and chemical precursors and that the State's case of constructive possession of those items was insufficient. In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain domin-

ion and control and (2) the capability to maintain dominion and control over the contraband. *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband, which may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* (quoting *Taylor v. State,* 482 N.E.2d 259, 261 (Ind. 1985)). The capability requirement is met when the State shows that the defendant is able to reduce the contraband to the defendant's personal possession. *Id.* Proof of a possessory interest in the premises in which contraband is found is adequate to show the capability to maintain control and dominion over the items in question. *Id.* (quoting *Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind.1984), *cert. denied,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984)). Possession of contraband by the defendant need not be exclusive and it can be possessed jointly. *Conrad v. State,* 747 N.E.2d 575, 583 (Ind.Ct.App.2001), *trans. denied.*

■ The sawed off shotgun was found inside a safe hidden in the floor of a hallway in Iddings' house; it is undisputed that Iddings had a possessory interest in this house, apparently as a renter. Allen, who had resided with Iddings until shortly before Iddings' arrest, testified that the safe was Iddings', that Allen did not know

3. Iddings frames his challenge to the finding he possessed the sawed off shotgun as a challenge to his serious violent felon firearm conviction. However, there was evidence of several other firearms found in Iddings' residence and the information alleged the possession of these firearms, as well as the sawed off shotgun, in the serious violent fel-

on count. Iddings does not challenge the sufficiency of the evidence with regard to his possession of these other firearms, the possession of any one of which was sufficient for him to be found guilty on the serious violent felon count. We view this argument solely as one directed to Iddings' conviction for dealing in a sawed off shotgun.

the combination to the safe, and that Iddings had told Allen his brother knew the combination if anyone needed to get into the safe. He further testified that the sawed off shotgun belonged to Iddings. Clearly, Iddings is asking us to reweigh evidence and judge Allen's credibility in this case. We cannot do so. The evidence most favorable to the judgment is sufficient to establish that Iddings possessed the sawed off shotgun.

As for the chemical precursors, Indiana State Police chemist Jonelle Shiel testified as to the numerous items found in the detached garage next to Iddings' house, including quantities of pseudoephedrine tablets and lithium batteries; some of the batteries had had their lithium removed. The charging information alleged pseudoephedrine and lithium metal as the chemical precursors of methamphetamine that Iddings possessed. Allen testified that he and Iddings cooked methamphetamine in the garage. We neither reweigh the evidence nor judge witness credibility and the evidence here is plainly sufficient to establish that Iddings possessed the chemical precursors of methamphetamine with the intent to manufacture that drug. The possibility that Allen may have jointly possessed these precursors with Iddings is irrelevant.

### IV. Lesser Included Offense

Iddings contends that his conviction for possessing chemical precursors of methamphetamine must be vacated because it is a lesser included offense of dealing in methamphetamine by manufacturing it, of which he was also convicted. Indiana Code Section 35–38–1–6 provides that if a defendant is charged with an offense and an included offense in separate counts and is found guilty of both counts, "judgment and sentence may not be entered against the defendant for the includ-

ed offense." Indiana Code Section 35–41–1–16 states:

'Included offense' means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an

offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser. *Zachary v. State,* 469 N.E.2d 744, 749 (Ind.1984).

There clearly is merit to Iddings' claim. Indiana Code Section 35–48–4–2(a)(1)(A) provides that a person who knowingly or intentionally manufactures a schedule II controlled substance, which includes methamphetamine, commits dealing in a schedule II controlled substance, a Class B felony. Indiana Code Section 35–48–4–14.5(b) provides that a person who possesses two or more chemical reagents or precursors with the intent to manufacture methamphetamine commits a Class D felony. We accept that it is impossible to knowingly or intentionally manufacture methamphetamine without first possessing the chemical precursors of methamphetamine with the intent to make the drug. Methamphetamine cannot be conjured up out of thin air. The sole practical difference between these two offenses is that one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing pro-

cess, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine.

 This alone, however, is insufficient to require vacation of Iddings' conviction for possession of the chemical precursors of methamphetamine. "If each offense is established by proof of an element not contained in the other, Indiana Code Section 35–38–1–6 does not preclude conviction and sentence for both offenses." *Ingram v. State*, 718 N.E.2d 379, 381 (Ind.1999). If the evidence indicates that one crime is independent of another crime, it is not an included offense. *See id.* (declining to hold defendant's criminal confinement conviction was lesser included offense of criminal deviate conduct and sexual battery where force or threat of force went beyond that necessary to effectuate those offenses). Section 35–38–1–6 only precludes convictions on multiple counts where those counts had identical elements of proof. *See Goudy v. State*, 689 N.E.2d 686, 698 (Ind.1997) (vacating attempted carjacking conviction as lesser included offense of attempted robbery but emphasizing that it was necessary to do so only because both offenses involved the attempted taking of the same motor vehicle). Thus, whether an offense is included in another within the meaning of Section 35–38–1–6 requires careful examination of the facts and circumstances of each particular case.

In *Bush v. State*, 772 N.E.2d 1020, 2002 WL 1832320, No. 69A01–0201–CR–22 (Ind. Ct.App. August 12, 2002), which we also decide today, we hold that "although the fact that police did not recover any completed methamphetamine from Bush's resi-

dence did not preclude his conviction for manufacturing the drug, ... such circumstances do preclude his additional conviction for possessing methamphetamine precursors with intent to manufacture." Slip op. p. 8, 772 N.E.2d at 1013. In the present case, by contrast, chemical analysis revealed that police recovered completed methamphetamine at Iddings' residence. Additionally, police recovered chemical precursors of methamphetamine, including pseudoephedrine and lithium metal, in large quantities and in proximity to other items associated with methamphetamine manufacturing, including soda pop bottles that apparently had been converted into hydrogen chloride gas generators. Thus, there was evidence in this case that Iddings (1) had already manufactured methamphetamine and (2) possessed the chemical precursors of mehtamphetamine with the intent to manufacture *more* of the drug. Under these particular circumstances, we cannot say Iddings' possession of chemical precursors of methamphetamine was necessarily a lesser included offense of manufacturing methamphetamine because the evidence permits the reasonable conclusion that two independent offenses were committed for which Iddings could be separately punished. Iddings' conviction for the possession of chemical precursors of methamphetamine with intent to manufacture that drug need not be vacated.

## V. Sentencing

 Iddings' final argument is that his total executed sentence of forty-eight years for these convictions is manifestly unreasonable.[4] Although we have the con-

---

**4.** It is not entirely clear whether Iddings is challenging the reasonableness of the sentence or the trial court's finding and balancing of aggravators and mitigators. Because

he does not specifically challenge the aggravators and mitigators found by the trial court or the adequacy of its sentencing statement,

stitutional authority to revise and review sentences under Article VII, Section 6 of the Indiana Constitution, we will do so only when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Lemos v. State,* 746 N.E.2d 972, 976 (Ind. 2001) (quoting former Ind. Appellate Rule 17(B), now Ind. Appellate Rule 7(B)). Our review under Rule 7(B) is very deferential to the trial court. *Lemos,* 746 N.E.2d at 976.

We begin by noting that Iddings was convicted of four Class B felonies and three Class D felonies. As such, the most severe possible punishment he faced was eighty-nine years, if maximum, consecutive sentences were imposed for each conviction. The absolute minimum sentence Iddings could have received was six years, if minimum, concurrent sentences were imposed. Viewed in this context, Iddings' sentence of forty-eight years falls roughly halfway between the minimum and maximum possible sentences. As we have recently observed, "sentences which approach or equal the maximum lawful sentence for the class of crime at issue . . . have historically invited appellate review and, upon occasion, revision." *Hildebrandt v. State,* 770 N.E.2d 355, 360 (Ind.Ct.App. 2002), *trans. pending.* Iddings' sentence does not approach the maximum lawful sentence. We also note that the actual time period Iddings may be expected to be incarcerated is twenty-four years, if he earns Class I one-for-one "good time" credit during his time in the Department of Correction. *See id.* at 364.

Here, the trial court found two undisputed aggravating circumstances: Iddings' criminal history, consisting of three misdemeanor battery convictions in 1997 and 1998,[5] and the fact that Iddings' was still on probation for one of those convictions when he committed the present offenses.[6] The trial court did not consider Iddings' earlier armed robbery conviction as part of his criminal history because it formed the basis of the serious violent felon charge. The trial court noted two mitigators: there was a seventeen-year period, apparently from 1980 to 1997, when Iddings was not convicted of any crime, and Iddings was addicted to drugs. Clearly, however, the trial court did not assign much weight to these factors. First, it noted that the seventeen-year period without convictions did not mean a seventeen-year period without Iddings engaging in criminal activity because he admitted to being heavily involved with the use of cocaine during that time period. Second, it only considered Iddings' addiction "a possible mitigator in a round about way" because he had originally made conscious choices to become involved with drugs. Tr. p. 670. Indeed, a history of substance abuse is sometimes found by trial courts to be an aggravator, not a mitigator. *See Hildebrandt,* 770 N.E.2d at 363. A sentencing court is not required to place the same value on a mitigating circumstance as does the defendant. *Beason v. State,* 690 N.E.2d 277, 283–84 (Ind.1998). The trial court here adequately explained why the mitigators where not entitled to much weight and, hence, why they were outweighed by the aggravators. Given the

we will address Iddings' argument as a "manifestly unreasonable" question.

5. Iddings was apparently convicted of one battery under a 1997 cause number and two batteries under a 1998 cause number.

6. Iddings incorrectly alleges in his brief that "[i]t is unclear what aggravating circumstances the court found besides Iddings' two misdemeanor convictions." Appellant's Br. p. 24.

aggravators and mitigators in this case, we cannot say it was manifestly unreasonable for the trial court to conclude that some enhancement of Iddings' sentence, falling five years short of the maximum enhancement for the Class B felonies, was warranted.

■ Iddings also contends that it is manifestly unreasonable for some of his sentences to run consecutively. "[T]here is neither any prohibition against relying on the same aggravating circumstances both to enhance a sentence and to order it served consecutively, nor any requirement that the trial court identify the factors that supported the sentence enhancement separately from the factors that supported consecutive sentences." *Blanche v. State*, 690 N.E.2d 709, 716 (Ind.1998). Iddings' argument that all of his sentences should run concurrently is based upon our supreme court's decisions in *Beno v. State*, 581 N.E.2d 922 (Ind.1991), and *Gregory v. State*, 644 N.E.2d 543 (Ind.1994). In those cases, the court held it was manifestly unreasonable to impose consecutive sentences for multiple drug dealing convictions where the convictions were based upon nearly identical State sponsored sales to a police informant as part of an ongoing sting operation. *Beno*, 581 N.E.2d at 924; *Gregory*, 644 N.E.2d at 546. In the present case the trial court did impose concurrent sentences for Iddings' two dealing convictions that were based upon the deliveries to Allen, a police informant. This was the only criminal activity in this case that was State sponsored. Iddings' manufacture of methamphetamine was not State sponsored in any way, nor was his possession of firearms as a serious violent felon, nor was his possession of a sawed off shotgun. *Beno* and *Gregory* did not preclude the trial court from imposing sentences for these convic-tions that run consecutive to the dealing by delivery sentences and to each other.

We otherwise do not find the manner in which the trial court sentenced Iddings to be manifestly unreasonable, focusing on the aggregate conduct of the multiple convictions at issue. *See Hildebrandt*, 770 N.E.2d at 365. Iddings was found guilty of committing seven different felonies. He was running a substantial methamphetamine lab and possessed not only one firearm, but several, including a sawed off shotgun. Despite a long period in which Iddings was not convicted of any crime, he was found guilty of committing three separate batteries in recent years and was still on probation for one of those offenses when he committed the present crimes. Under these circumstances, we cannot say that a sentence of forty-eight years, with a possible time served of twenty-four years, is manifestly unreasonable, particularly in comparison to the maximum eighty-nine year sentence that he potentially faced.

### Conclusion

The trial court did not err in denying Iddings' motion to suppress because there was a substantial basis for issuance of the search warrant. Iddings has waived any argument regarding the playing of the audiotape for the jury. There is sufficient evidence to support his convictions. In this particular case, Iddings' conviction for possession of the chemical precursors of methamphetamine with the intent to manufacture that drug is not a lesser included offense of manufacturing methamphetamine. Finally, Iddings' forty-eight year executed sentence is not manifestly unreasonable. We affirm in all respects.

Affirmed.

MATHIAS, J., concurs.

KIRSCH, J., concurs in part and dissents in part, with opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I fully concur in the decision of the majority with regard to all issues except that involving sentencing. From that decision, I respectfully dissent.

Our jurisprudence regarding appellate sentence review continues to evolve. As it does, we struggle with the appropriate balance between the deference due the trial court's discretion in its sentencing decision and our constitutional mandate under Article VII, Section 4 of the Indiana Constitution to review and revise sentences. Here, for me, the balance tips on the side of review and revision. I believe that a forty-eight year sentence for a non-violent crime given to a defendant whose criminal history is not extensive and in the last twenty-two years includes only three misdemeanor battery convictions is "manifestly unreasonable in light of the nature of the offense and the character of the offender." I would vacate the sentence and remand with instructions to enter a sentence for twenty-four years.