# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 05 2012, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUGLAS W. FANCIL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  20A01-1107-CR-339 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0909-FA-28

April 5, 2012

OPINION - FOR PUBLICATION

**BAKER, Judge**

In this case, the defendant admitted to manufacturing methamphetamine (meth) as he led police officers on a tour of the manufacturing operation that he maintained at his residence. The police were unable to recover any amount of meth from the defendant's residence; but because of the volume of manufacturing materials and empty pseudoephedrine packets found at the residence and defendant's recent history of purchasing pseudoephedrine, the State charged defendant with dealing in three or more grams of meth, enough to establish a class A felony.

To prove that the defendant manufactured the pseudoephedrine into three or more grams of meth, the State called a detective experienced in meth manufacturing to testify regarding the conversion ratio of pseudoephedrine to meth. The detective testified that "you, could" use fifteen grams of pseudoephedrine to manufacture five grams of meth. Tr. p. 282. Following our opinion in Halferty v. State, we must conclude that this testimony is insufficient to prove beyond a reasonable doubt that defendant manufactured three or more grams of meth. 930 N.E.2d 1149, 1153 (Ind. Ct. App. 2010), trans. denied.

Appellant-defendant Douglas W. Fancil appeals his conviction following a jury trial for class A felony Dealing in Methamphetamine[1]. Specifically, he contends that the trial court erred when it admitted his confession and a police officer's opinion testimony as to the amount of meth that could be manufactured from a specified amount of pseudoephedrine. Had that evidence been properly excluded, Fancil argues that the State would have failed to present sufficient evidence that he manufactured meth or that he

---

[1] Ind. Code § 35-48-4-1.1(a)(1)(A), (b)(1).

2

manufactured three or more grams of meth–the amount necessary to support a class A felony. Fancil further argues that the trial court erred when it refused his proposed jury instruction on possession of reagents or precursors with intent to manufacture meth as a lesser-included offense of dealing in meth and that his conviction violates double jeopardy principles. Finding that the evidence was insufficient to support the conclusion that Fancil manufactured three or more grams of meth but finding no other error, we affirm in part, reverse in part, and remand with instructions to enter a conviction for class B felony dealing in meth and sentence accordingly.

## FACTS

On March 22 and 24, 2009, Fancil purchased a total of 4.8 grams of pseudoephedrine from CVS and Kroger pharmacies in Warsaw. On April 1, 6, 9, and 25, 2009, Fancil purchased a total of 10.08 grams of pseudoephedrine from a Wal-mart pharmacy in Warsaw. For the four purchases made in April, the State charged Fancil with four misdemeanor counts of purchasing drugs containing more than three grams of pseudoephedrine in one week. Fancil had previously been charged with burglary and dealing in meth in an unrelated case; and pursuant to a plea agreement in which Fancil pleaded guilty to those charges, the State agreed to dismiss the four charges for the April purchases.

In May 2009, the Indiana State Police (ISP) began conducting surveillance of Fancil's residence in New Paris after receiving information that Fancil was

manufacturing meth. On May 7, 2009, an officer executed a traffic stop on a vehicle seen leaving Fancil's residence and discovered an active meth lab inside the vehicle.

On May 19, 2009, Fancil agreed to speak with police officers about drug activity. ISP Sergeant Chad Larsh met Fancil at his residence, where Fancil consented both verbally and in writing to a search of his property and made a recorded statement. Fancil then led Sergeant Larsh and two other police officers through a detached garage and his residence, directing their attention to materials used in the meth manufacturing process. He also admitted that he had been manufacturing meth for eight months and that approximately nine other individuals had manufactured meth with him.

Near the detached garage, the police officers observed a burn barrel in which they found multiple punctured aerosol-style cans and a bag containing a punctured starter fluid can and stripped lithium batteries. Inside the residence, the police collected drug paraphernalia, including eighteen used syringes and "foilies"[2] with burnt residue. Tr. p. 94. In the bathroom, Fancil directed Sergeant Larsh to two "spent or a used bottle with a dried chemical in the bottom of it which was the result of a meth cook" and told him of a third bottle on the stairwell that was also found to contain residue. Id. at 57-58, 94, 227, 232, 243-44. Fancil told Sgt. Larsh that there was additional "meth trash" in the basement. Id. at 57-58. Upon completing a sweep of the house, the police collected stripped lithium batteries, punctured starter fluid canisters, several hydrogen chloride (HCL) generators, a coffee grinder containing ground pseudoephedrine, Drano bottles,

---

[2] Sergeant Larsh testified that a "foily" is a strip of aluminum foil that is used to smoke or ingest meth. Tr. p. 94.

emptied cold packs, Coleman fuel cans, salt containers, Ziploc bags with residue, coffee filters, and emptied blister packs that once contained fifteen total grams of pseudoephedrine.

In his recorded statement, Fancil admitted that he had manufactured meth as recently as three weeks prior to making his statement. He described the bottle in the bathroom that he directed the police officers to as an "un-active bottle" that once contained the ingredients necessary to make meth but was "dried up, you know, because it had not been, its been like all used up." Tr. p. 58. Fancil then explained in detail the exact process and quantities of materials he uses to make meth. He further explained that by using a combination of both the "green kind" and "white kind" of Drano ". . . a lot of times it seems to work better." Tr. p. 59.

On September 8, 2009, the State charged Fancil with dealing in meth, a class A felony. The information specifically charged Fancil with manufacturing three or more grams of pure or adulterated meth on or about May 19, 2009.

At trial, the State introduced into evidence Fancil's recorded statement and pictures of the "meth trash" at Fancil's residence. The State called ISP Detective Jason Faulstich as a skilled witness to testify about the process for making meth from pseudophredrine and the amount the process yields. As a member of the ISP's clandestine lab team, Detective Faulstich processed 450 clandestine labs and interviewed numerous "cooks" regarding their processes for manufacturing meth. He has been trained to understand the manufacturing process for meth. Specifically, he has

5

manufactured meth twice in lab settings and once outdoors utilizing stripped lithium batteries and other materials similar to "what a person would use in the street." Tr. p. 299. Detective Faulstitch testified at trial that, in lab settings, he achieved a pseudophedrine to meth conversion ratio of about ninety percent.

With regard to Fancil's capabilities, Detective Faulstitch testified that, in his opinion, Fancil's lab was one of the larger scale of what he had seen in his training and experience. When asked about his opinion as to the skill level or sophistication of the lab found at Fancil's home, Detective Faulstich answered that "this would appear, appear to me this was not a first-time run. Meaning that this was definitely a more advanced cook. I would not say totally advanced but definitely a lot more advanced that just your normal cook." Tr. p. 301. Over Fancil's objection, the following exchange then occurred between the prosecutor and Detective Faulstich,

Q. Do you recall that I gave you a coffee filter, correct?

A. Yes.

Q. And I gave you five individual one-gram packets of Splenda?

A. Correct.

Q. You opened up each of those five and poured it into the coffee filter, is that correct?

A. Correct.

Q. As the evidence indicated from your testimony, you've processed some 450 labs?

A. That is correct.

6

Q. You had extensive education and training with regard to methamphetamine and the manufacture the [sic] methamphetamine, correct?

A. That is correct.

Q. And you have personally made methamphetamine in the past, is that correct?

A. Correct.

Q. In this particular case, there were blister packs of pseudophredrine to the tune of roughly 15 grams, is that correct?

A. That is correct.

Q. If you were to use roughly 15 grams of pseudoephedrine and combine it with the other ingredients necessary to make meth, do you think you would be able to make the same or more meth than is in the coffee filter?

A. <u>Yes, you could</u>.

Tr. p. 281-82 (emphasis added).

At the conclusion of the trial, the trial court instructed the jury on class A felony dealing in meth and class B felony dealing in meth as a lesser-included offense. The trial court refused to instruct the jury on the lesser-included offense of possession of reagents or precursors with intent to manufacture methamphetamine. The jury then found Fancil guilty as charged. On July 14, 2011, the trial court sentenced Fancil to forty-eight years of incarceration, with four years suspended to probation. Fancil now appeals.

7

DECISION AND DISCUSSION

I. Class A Felony Dealing in Methamphetimine

Fancil argues that the trial court erred when it permitted Detective Faulstich to testify as a skilled witness regarding the amount of meth that could have been produced from materials found at Fancil's residence. Without that evidence, Fancil argues that the evidence is insufficient to support his conviction for class A dealing in meth.

The admissibility of evidence is within the sound discretion of the trial court. Curley v. State, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

Indiana Code section 35-48-4-1.1 provides that a person is guilty class A felony dealing in meth if he knowingly or intentionally manufactures three or more grams of meth. The police recovered empty blister packs that once contained fifteen grams of pseudoephedrine from Fancil's residence, and the State presented evidence of pharmacy logs indicating that Fancil had purchased fifteen grams of pseudophedrine within the two months before his arrest. State's Ex. 202-05. But, it appears from the record that the police were unable to recover meth in any measurable amount at Fancil's residence;

accordingly, the State introduced Detective Faulstich's meth yield testimony to prove that Fancil manufactured three or more grams of meth.

Fancil contends that the trial court erred when, over his objection, it admitted Detective Faulstich's opinion testimony regarding the amount of meth that could be manufactured based upon the empty pseudoephedrine packets. Specifically, Fancil argues that Detective Faulstich's testimony was improper because it requires scientific knowledge and Faulstich was only admitted as a skilled witness. The State contends that Detective Faulstich testified as a skilled witness, and as such, the trial court did not abuse its discretion in admitting the testimony. Assuming without deciding whether Detective Faulstich's testimony was admissible, we proceed to address the issue of whether the evidence is sufficient to prove that Fancil manufactured three or more grams of meth, and conclude that it is not.

When reviewing the sufficiency of the evidence, we consider only the evidence that supports the verdict, and draw all reasonable inferences therefrom. Warren v. State, 725 N.E.2d 828, 834 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of witnesses. Id. We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. Id.

This case is similar to Halferty v. State, 930 N.E.2d 1149 (Ind. Ct. App. 2010) trans. denied. In Halferty, the State charged Halferty with class A dealing in meth. Id. at 1150. The police recovered .40 grams of meth and 4.61 grams of pseudophedrine from

the scene.  Id.  In order to prove that Halferty had manufactured the remaining 2.6 grams to establish a class A felony, the State called then Trooper Faulstich to testify regarding the conversion ratio of pseudoephedrine to meth.  When Halferty objected pursuant to Indiana Evidence Rule 702[3], arguing that the State was eliciting expert witness testimony without laying a proper scientific foundation, the State responded that "it was not asking Trooper Faulstich about a specific cook, but instead 'talking about conversion in general.'"  Id. at 1153 (quoting Tr. p. 275).  Trooper Faulstich testified that "'in general,' the conversion ratio between ephedrine/pseudoephedrine to methamphetamine was 'usually right around 70, 80 percent' and that one gram of ephedrine/pseudoephedrine would produce 'about' .70 or .80 grams of methampthetimine."  Id. (quoting Tr. p. 275, 276) (emphasis in original).  Trooper Faulstich then testified that the ratio can change depending on the process and person who is cooking, admitting that the ratio can "'fall below 50 percent.'"  Id. (quoting Tr. p. 326).

At the conclusion of the trial, the jury convicted Halferty as charged.  Halferty appealed, and a panel this Court reversed his class A felony conviction for dealing in meth, concluding that the evidence was insufficient to prove that Halferty manufactured three or more grams of meth.  Id.  The panel observed that Trooper Faulstich "testified that the conversion ratio was 'in general,' 'usually,' or 'about' seventy to eight percent,"

---

[3] Indiana Evidence Rule 702 provides:
(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

but also testified that the conversion ratio could be below fifty percent depending on the cook. Id. at 1153. Using the fifty percent conversion ratio, the panel found that the amount of pseudophedrine found at the scene would not have produce 2.6 grams of meth. In addition, the panel held that the use of "in general," "usually," or "about" does not constitute proof beyond a reasonable doubt that Halferty manufactured the 2.6 grams of meth and reversed Halfery's conviction. Id. at 1154.

Here, we similarly conclude that Detective Faulstich's testimony does not constitute proof beyond a reasonable doubt that Fancil manufactured three or more grams of meth on or about May 19, 2009 as the State had charged. Appellant's App. p. 69. As discussed above, the testimony the State introduced to establish that Fancil manufactured three grams or more of meth is:

> Q. If you were to use roughly 15 grams of pseudoephedrine and combine it with the other ingredients necessary to make meth, do you think you would be able to make the same or more meth than is in the coffee filter?
>
> A. Yes, you could.

Tr. p. 282 (emphasis added). Both the question and answer refer to a general meth yield ratio of the sort deemed insufficient in Halferty. 930 N.E.2d at 1154. Likewise, we find that the use of the term "could" be a testifying police officer is, in and of itself, not proof beyond a reasonable doubt that Fancil manufactured three or more grams of meth. Id. Thus, we conclude that the evidence is insufficient to support his conviction for class A dealing in meth.

Notwithstanding this determination, the State argues that this case is distinguishable from Halferty because the State presented evidence that Fancil has the skill and experience to produce an efficient conversion yield. Appellee's Br. p. 14. The State contends that Fancil only had to achieve a conversion ratio of twenty percent, not the fifty percent considered in Halferty, 930 N.E.2d at 1154, in order to produce three grams of meth from fifteen grams of pseudophedrine. We find these arguments unavailing. Although the State did present evidence that Fancil had been manufacturing meth for a number of months and possessed a degree of skill, tr. p. 300-301, Detective Faulstich's testimony did not address a specific conversion ratio for Fancil in light of his capability and the materials present at his residence. Moreover, although Fancil only needed to be able to convert at a rate of twenty percent to produce the three grams, the State cannot rely on the low conversion ratio from Halferty that was not in evidence in this case.

That said, we note that the trial court instructed the jury, "[i]f the State failed to prove the amount of methamphetamine involved weighed three (3) grams or more, you can consider whether the State proved Dealing in Methamphetamine, a Class B Felony." Appellant's App. p. 17. Indiana Code section 35-48-4-1.1 provides that a person who knowingly or intentionally manufactures meth, pure or unadulterated, commits class B felony dealing in meth.

Here, Fancil confessed to manufacturing meth and the police officers recovered from Fancil's residence materials that had been used to manufacture meth. Tr. p. 57-59.;

12

State's Ex. 17-28. The police officers testified at trial that they found what one described as "meth trash" from materials used in the production of meth at Fancil's residence Tr. p. 124. This "meth trash" included empty pseudoephedrine blister packs, stripped lithium batteries, punctured starter fluid canisters, empty Coleman fuel containers, cold packs emptied of ammonium nitrate, Drano bottles, HCL generators, and a coffee grinder containing ground pseudoephedrine. Id. at 232-36, 239-41, 252-53; State's Ex. 18-24, 43-44, 105. The police officers recovered several reactionary bottles containing dried white residue with tubes attached at the top. Tr. 94, 227, 232, 243-44; State's Ex. 19, 31. The officers also found burnt "foilies" with residue, baggies with corners cut off, and used syringes, indicating the process had produced a finished, usable product. Tr. 94, 237-38, 248-49, 251; State's Ex. 26, 35, 38, 106. The State presented evidence that Fancil had purchased pseudophedrine within two months before his arrest. State's Ex. 202-05. Detective Faulstich testified that, in his opinion, Fancil was operating a meth lab "more on the larger scale." Id. at 301. In light of Fancil's confession to police the evidence found at Fancil's residence, and Detective Faulstich's testimony, the evidence is sufficient to prove that Fancil committed class B felony dealing in meth.

We note that Fancil argues that the trial court committed reversible error when it admitted his confession into evidence to establish the commission of the charged offense because the State did not provide sufficient independent evidence of the corpus delicti. The corpus delicti rule states that a confession alone is insufficient to prove that a crime has been committed and that there must be independent evidence that merely 'provide[s]

13

an inference that a crime was committed.'" Workman v. State, 716 N.E.2d 445, 447-48

(quoting Stevens v. State, 691 N.E.2d 412, 424-425 (Ind. 1995)). As discussed above,

there is ample evidence independent of Fancil's confession that he manufactured meth,

and as a result, his corpus delicti argument fails.

## II. Jury Instruction

Fancil contends that the trial court erred when it refused to tender his proposed

jury instruction on the lesser-included of offense of possession of reagents or precursors

with the intent to manufacture meth. When deciding whether to instruct the jury on a

lesser included offense, a trial court must first "compare the statute defining the crime

charged with the statute defining the lesser-included offense" to determine whether the

claimed lesser-included offense is inherently included in the charged offense, either

because the lesser offense "may be established 'by proof of the same material elements or

less than all the material elements' defining the crime charged" or because the only

distinction "is that a lesser culpability is required to establish the commission of the lesser

offense." Id. at 566–67.

Where the claimed lesser-included offense is neither inherently nor factually

included in the charged offense, the trial court should not give the proffered instruction to

the jury. Id. at 567. If, however, the claimed lesser-included offense is either inherently

or factually included in the charged offense, the trial court

> must look at the evidence presented in the case by both parties. If there is a
> serious evidentiary dispute about the element or elements distinguishing the
> greater from the lesser offense and if, in view of this dispute, a jury could

14

conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

Id. (citations omitted). When the court rejects tendered instructions on lesser-included offenses on their merits, but the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of that dispute, the standard of review is an abuse of discretion. Brown v. State, 703 N.E.2d 1010, 1020 (Ind. 1998).

We have found that possession of precursors with intent to manufacture meth is a lesser-included offense of manufacturing meth. Scott v. State, 803 N.E.2d. 1231, 1238 (Ind. Ct. App. 2004); Iddings v. State, 772 N.E.2d 1008, 1016 (Ind. Ct. App. 2002); Bush, 772 N.E.2d at 1024. Therefore, the only issue here is whether there was a serious evidentiary dispute. The distinguishing element between these two offenses−and where there must be a serious evidentiary dispute− is "one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine." Bush, 772 N.E.2d. at 1024.

Here, there was no dispute at Fancil's trial that he manufactured meth. In his recorded statement, Fancil admitted that he had manufactured meth as recently as three

15

weeks before giving his statement. Tr. p. 58. Accordingly, Fancil's admission nullified any evidentiary dispute between the alleged crime of dealing in meth and Fancil's proffered lesser-included offense of possession of reagents or precursors with the intent to manufacture meth. Put another way, a jury could not have concluded that the lesser offense was committed but not the greater. Thus, the trial court properly exercised its discretion in denying Fancil's proffered instruction.

### III. Double Jeopardy

Fancil contends that his conviction violates the principles of double jeopardy under the Indiana Constitution because "the State was permitted to use the same evidence to convict [Fancil] of manufacturing meth that was the subject of charges that were dismissed pursuant to a plea agreement." Appellant's Br. p. 15. Specifically, Fancil argues that, because the prior charges for purchases of meth made in April 2006 were dismissed pursuant to a plea agreement, the State was foreclosed from using this evidence and its use violates the constitutional prohibition against double jeopardy under the actual evidence test. See Richardson v. State, 717 N.E.2d 32, 53 (Ind. 1999). Fancil does not contend the language of the plea agreement prevents the State from using the evidence of the purchases in a subsequent prosecution for charges other than purchasing drugs containing more than three grams of pseudoephedrine in one week.

"Before a defendant can be subjected to double jeopardy, he must be subjected to jeopardy." Emmons v. State, 847 N.E.2d 1035, 1037 (Ind. Ct. App 2006). The State prohibitions against double jeopardy protect against successive prosecutions for the same

16

offense after acquittal or conviction and against multiple criminal punishments for the same offense. Jaramillo v. State, 823 N.E.2d 1187, 1188 (Ind. 2005). (emphasis added). Under the actual evidence test, two challenged offenses constitute the "same offense" in a claim of double jeopardy if a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Richardson, 717 N.E.2d at 53.

Here, the charges for purchasing drugs containing more than three grams of pseudoephedrine in one week based upon the April 2006 purchases were dismissed pursuant to a plea agreement. Tr. p. 273-74; Defendant's Ex. C. Thus, Fancil was never prosecuted or punished for those purchases or the use of those purchases. Therefore, the evidence presented in support of his conviction for dealing in meth does not violate double jeopardy concerns.

## CONCLUSION

We conclude that the State failed to present sufficient evidence that Fancil manufactured more than three grams of meth. Therefore, we reverse Fancil's conviction for class A felony dealing in meth and remand with instructions to enter a conviction for class B felony dealing in meth. We also instruct the trial court to resentence Fancil in accordance with the changed conviction.

The trial court's judgment is affirmed in part, reversed in part and remanded with

17

instructions.

DARDEN, J., concurs.

BAILEY, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DOUGLAS W. FANCIL,                     )
                                        )
    Appellant-Defendant,           )
                                        )
        vs.                    )     No. 20A01-1107-CR-339
                                        )
STATE OF INDIANA,                      )
                                        )
    Appellee-Plaintiff.            )

**BAILEY, Judge, dissenting**

The majority concludes that the State presented insufficient evidence from which a reasonable finder of fact could conclude that Fancil manufactured three or more grams of methamphetamine. Because I cannot agree that the evidence was insufficient to support an inference that Fancil had manufactured an amount of methamphetamine sufficient to sustain the conviction for Dealing in Methamphetamine, as a Class A felony, I respectfully dissent.

19

Our standard of review when a defendant challenges the sufficiency of the evidence is well-settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

The majority's reasoning relies upon its interpretation of Halferty v. State, 930 N.E.2d 1149 (Ind. Ct. App. 2010), trans. denied. In Halferty, the State introduced testimony that the conversion ratio of one gram of pseudoephedrine to .7 or .8 grams of methamphetamine was true "in general," but that the ratio could drop below fifty percent. Id. at 1153. Because in that situation the total yield of methamphetamine from precursor pseudoephedrine would bring the total amount of methamphetamine Halferty would have manufactured below the three grams required for a Class A felony conviction, we concluded the evidence was insufficient to sustain Halferty's Class A conviction. Id. at 1154.

The situation that faced us in Halferty does not present itself here. In that case, the testimony established a range of possible yields of methamphetamine both above and below the three grams total required to convict Halferty of a Class A felony. Here, the

20

testimony is that the total amount of precursor pseudoephedrine possessed by Fancil came to around fifteen grams. The State elicited Detective Faulstich's testimony that the fifteen grams of pseudoephedrine could produce five or more grams of methamphetamine.

The majority concludes that "the use of the term 'could' … is, in and of itself, not proof beyond a reasonable doubt that Fancil manufactured three or more grams of meth." Slip Op. at 11. Yet while "the State cannot rely on the low conversion ratio from Halferty" because that ratio was not in evidence, Slip Op. at 12, the evidence that was put before the jury indicated that, given the amount of pseudoephedrine and other supplies recovered from the home, Fancil could have produced <u>at least</u> five grams of methamphetamine as an experienced lab operator.

This evidence, I think, permits a reasonable inference that Fancil actually did produce five or more grams of methamphetamine. Our standard of review requires that we reverse a conviction only when "<u>no</u> reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Drane, 867 N.E.2d at 146 (emphasis added). That condition was not met here, and thus I think a reasonable jury could determine beyond a reasonable doubt that Fancil was guilty of Class A Dealing in Methamphetamine. I would therefore affirm his conviction of the Class A felony.

Thus, I respectfully dissent.