**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Sep 24 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ANDREW HUMPHREYS,                )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.                   )    No. 79A04-1112-CR-677
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-0912-FB-48

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Andrew Humphreys ("Humphreys") appeals his convictions of and sentences for conspiracy to manufacture methamphetamine[1] as a Class B felony, dealing in methamphetamine[2] as a Class B felony, illegal drug lab[3] as a Class D felony, and a habitual offender adjudication, contending that there is insufficient evidence to sustain his habitual offender adjudication, that his convictions for dealing in methamphetamine and possession of precursors ("illegal drug lab") violate double jeopardy principles, and that he was entitled to discharge under Indiana Rule of Criminal Procedure 4(B) due to the trial court's scheduling of his trial. *Sua sponte*, we examine whether the trial court erred by entering a separate conviction and sentence for Humphreys's habitual offender adjudication.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Law enforcement officers from various law enforcement agencies began surveillance of Humphreys on December 10, 2009. On that day and the next, the officers followed Humphreys and Adam Williams ("Williams") while the two drove in Humphreys's white Jeep Cherokee to various places. In particular, Humphreys and Williams went to two or three Wal-Marts, two Payless grocery stores, a CVS pharmacy, a Marsh grocery store, and a Walgreen's, each in Tippecanoe County. Later, the officers returned to the stores where Humphreys had shopped, and obtained the stores' pseudoephedrine logs. The

---

[1] *See* Ind. Code §§ 35-41-5-2; 35-48-4-1.1.

[2] *See* Ind. Code § 35-48-4-1.1.

[3] *See* Ind. Code § 35-48-4-14.5(b).

pseudoephedrine logs showed that Humphreys and Williams had purchased 2.88 grams from Wal-Mart, 5.05 grams from CVS, 7.44 grams from Walgreen's, two packages from Payless, and three packages from Marsh, for a total in excess of ten grams of pseudoephedrine.

After Humphreys and Williams made the pseudoephedrine purchases, law enforcement officers observed Humphreys and Williams go to Leslie Mantle's ("Mantle") residence, which included a house and a pole barn. Humphreys and Williams walked back and forth between the house and the pole barn several times, and on one occasion carried a duffle bag to the pole barn. Humphreys and Williams left Mantle's residence between 1:00 a.m. and 1:30 a.m.

Lafayette Police Lieutenant Gregory Dale ("Lieutenant Dale") initiated a traffic stop of Humphreys's vehicle because it was traveling seventy-five miles per hour in a fifty miles-per-hour zone. A canine, which was at the scene, alerted on Humphreys's vehicle, and the officer conducted a vehicle search. Six lithium batteries, coffee filters, and a clutch fluid bottle were found. Lieutenant Dale issued a verbal warning to Humphreys, after which Humphreys and Williams returned to Mantle's residence at about 3:30 a.m. The two walked back and forth between the house and the pole barn, eventually leaving after approximately forty-five minutes.

On December 11, 2009, at approximately 8:35 a.m., Tippecanoe Sheriff's Department Lieutenant Daniel McGrew ("Lieutenant McGrew") arrived at Mantle's residence and spoke with him on the front porch. Mantle consented to a search of the pole barn, but refused a search of his house. Based on the potential methamphetamine production in the pole barn,

Lieutenant McGrew secured a search warrant for Mantle's residence. During the search of Mantle's house, officers discovered a marijuana grow operation in the basement, multiple firearms, signs of methamphetamine manufacturing in the basement, plastic baggies with residue, strainers, and a grinding bowl. A pitcher and glass jar were found inside Mantle's house. One of those items was tested by the Indiana State Police Crime Laboratory and was found to contain methamphetamine and pseudoephedrine or ephedrine.

Law enforcement officers called the fire department prior to the search of the pole barn because of fumes emanating from inside the barn. During the search of the pole barn, law enforcement officers found a tank containing ammonia, a Coleman fuel can, a glass Ball jar, four hydrogen chloride gas ("HCL") generators/plastic bottles that tested positive for hydrochloric gas, a duffle bag containing items used to manufacture methamphetamine, a wooden stick with crushed pill dough, lithium battery strip remnants, two bottles of heat, plastic tubing, a tool box, folded up aluminum foil with burnt residue, funnels, drain opener, a wood pile with white pill dough residue, and an active cooking reactionary vessel containing ammonia.

Mantle recalled that Williams had come to his house that evening wanting to store some items in Mantle's pole barn. Williams offered to pay Mantle, and Mantle agreed. Humphreys later asked to store some items in Mantle's basement, but Mantle refused. When Mantle went outside and stood on his porch, he smelled ammonia. He asked Humphreys about the smell. Humphreys stated "we're making meth, dumbass." *Tr.* at 896.

4

Humphreys was arrested on December 14, 2009 and was charged with conspiracy to manufacture methamphetamine, dealing in methamphetamine, possession of more than ten grams of pseudoephedrine or phenylpropanolamine, possession of anhydrous ammonia or an ammonia solution with intent to manufacture methamphetamine, possession of precursors with intent to manufacture methamphetamine, or illegal drug lab, and an habitual offender allegation.

At his initial hearing on December 17, 2009, Humphreys made a verbal request for a speedy trial, and then filed a hand-written *pro se* request on December 21, 2009. On December 28, 2009, the trial court ordered Humphreys's motion to be forwarded to Humphreys's counsel. His counsel filed an appearance in the case the next day. On January 22, 2010, Humphreys's counsel agreed to a jury trial date of March1 16, 2010, reaffirming the dates previously scheduled. During a February 8, 2010, status hearing, Humphreys requested a speedy trial. The trial court stated that the March 16, 2010 jury trial date had been previously reaffirmed by counsel.

On February 10, 2010, Humphreys was released on his own recognizance. The State explained that Humphreys would likely be taken back into the custody of the Department of Correction, because Humphreys was on parole at the time of the commission of the present offenses. On May 25, 2010, Humphreys filed a motion for discharge pursuant to Indiana Criminal Rule 4(B), which the trial court denied. Humphreys filed a *pro se* request to certify the order for interlocutory appeal. The trial court granted the request, and this Court declined jurisdiction.

A jury found Humphreys guilty of conspiracy to manufacture methamphetamine, dealing in methamphetamine, and illegal drug lab on September 2, 2011. On October 28, 2011, the trial court found Humphreys to be an habitual offender. The trial court sentenced Humphreys to an aggregate thirty-six-year sentence, with thirty years executed in the Department of Correction, with eight years of that sentence to be served in community corrections, and six years suspended to probation. Humphreys now appeals.

## DISCUSSION AND DECISION

Humphreys asserts that the trial court's scheduling of his jury trial entitled him to discharge under Indiana Rule of Criminal Procedure 4(B). He claims that the trial court erred by denying his motion for discharge because the State failed to bring him to trial within seventy days. We review *de novo* a trial court's denial of a motion to discharge a defendant. *Kirby v. State*, 774 N.E.2d 523, 530 (Ind. Ct. App. 2002), *trans. denied.*

Our Supreme Court has reiterated the following about Indiana Criminal Rule 4(B):

Both the U.S. and Indiana Constitutions protect the right of an accused to a speedy trial. U.S. Const. Amend. IV; Ind. Const. art. 1, § 12. The speedy-trial right is a "'fundamental principle of constitutional law'" that has been zealously guarded by our courts. *Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995) (quoting *Castle v. State*, 237 Ind. 83, 85, 143 N.E.2d 570, 572 (1957)).

Indiana Criminal Rule 4 generally implements the constitutional right of an accused to a speedy trial. *Bridwell v. State*, 659 N.E.2d 552, 553 (Ind. 1995). Subsection (B) of the Rule is at issue, and it provides, in part, that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion." Ind. Crim. Rule 4(B)(1). The Rule continues by listing conditions that excuse a failure to bring an accused to trial within the seventy-day timeframe. *Id.*

6

It is well established that Criminal Rule 4 places an "affirmative duty" on the State to bring a defendant to trial. *Curtis v. State,* 948 N.E.2d 1143, 1151 (Ind. 2011). By the same token, the purpose of Criminal Rule 4 is not to provide defendants with a technical means to avoid trial but rather to assure speedy trials. *Loyd v. State*, 272 Ind. 404, 410, 398 N.E.2d 1260, 1266 (1980).

*Cundiff v. State*, 967 N.E.2d 1026, 1027-28 (Ind. 2012) (internal footnotes omitted).

Defendants must maintain a position reasonably consistent with a request for a speedy trial and must object, as soon as possible, to a trial setting beyond the seventy-day time period provided for by rule. *McKay v. State*, 714 N.E.2d 1182, 1188-89 (Ind. Ct. App. 1999). When a defendant fails to object, he is deemed to have acquiesced in the trial date and to have abandoned his request for a speedy trial. *Id*. at 1189. In this case, Humphreys made *pro se* speedy trial motions prior to the appointment of counsel. After Humphreys was represented by counsel, the record reflects that counsel explicitly reaffirmed the trial date outside the seventy-day period. Thus, Humphreys acquiesced to that date.

Assuming for the sake of argument that Humphreys did not acquiesce to the trial date, his claim still fails. Humphreys was released on his own recognizance prior to trial. "Once released from custody, a defendant receives no further benefit from Crim. R. 4(B)." *Mork v. State*, 912 N.E.2d 408, 410-11 (Ind. Ct. App. 2009) (quoting *Williams v. State*, 631 N.E.2d 485, 486-87 (Ind. 1994)). As our Supreme Court stated in *Cundiff*, "for Rule 4(B) to apply, the defendant must be incarcerated on the charge for which he seeks a speedy trial, and as long as that requirement is met, the availability of Rule 4(B) is not affected if the defendant is also incarcerated on other grounds." 967 N.E.2d at 1031. Here, Humphreys was released on the current charges, but was incarcerated because the parole board initiated revocation

7

proceedings related to his parole on a previous unrelated sentence. Thus, the trial court did not err by denying Humphreys's motion for discharge.

Next, Humphreys asserts that there is insufficient evidence to support his habitual offender adjudication. In particular, Humphreys argues that the adjudication cannot be used to enhance any of the sentences for his offenses.

We expressed our standard of review on this issue in *Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010) as follows:

> Upon a challenge to the sufficiency of the evidence for an habitual offender determination, the appellate court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we examine only the evidence most favorable to the judgment, together will all of the reasonable and logical inferences to be drawn therefrom. The habitual offender determination will be sustained on appeal so long as there is substantial evidence of probative value supporting the judgment.

(internal citations omitted).

The sentence of a person convicted of a felony may be enhanced by up to 30 years if he or she is an habitual offender. Ind. Code §35-50-2-8(h). The habitual offender enhancement is available where the State proves beyond a reasonable doubt that the defendant previously has been convicted of two unrelated felonies. I.C. §35-50-2-8(a), (g). Pursuant to Indiana Code section 35-50-2-8(c), (1) the second prior unrelated felony must be committed after sentencing for the first prior unrelated felony conviction; and (2) the offense for which the State seeks to have the person sentenced as an habitual offender must be committed after sentencing for the second prior unrelated felony conviction.

8

Here, Humphreys was convicted of conspiracy to manufacture methamphetamine as a Class B felony. The trial court found that the State proved during the habitual offender phase of the trial that Humphreys had three prior unrelated felony convictions. The State established that he was convicted of burglary as a Class B felony in 1995, battery on a law enforcement officer as a Class D felony in 2002, and robbery as a Class C felony in 2006. Thus, Humphreys's habitual offender adjudication was supported by sufficient evidence, *viz.*, he was convicted of a felony in the first phase of the trial and had three prior unrelated felony convictions.

Humphreys asserts, however, that the limiting section of Indiana Code section 35-50-2-8(b)(3) makes an habitual offender adjudication inapplicable to him. That subsection limits the application of the general habitual offender rule when the instant offense is a drug offense. The State correctly notes that Humphreys was convicted of conspiracy to manufacture methamphetamine, and contends that the habitual offender adjudication is proper. Our Supreme Court addressed this issue in *Owens v. State*, 929 N.E.2d 754, 756-57 (Ind. 2010), and the language pertinent to the issue follows:

> Well-settled Indiana law provides that the conspiracy to commit a felony is a distinct offense from the contemplated felony. The crime of conspiracy to commit a felony has three elements: 1) the intent to commit a felony, 2) an agreement with another person to commit a felony, and 3) an overt act, performed by either the defendant or the person with whom the defendant has entered into the agreement. A conspiracy is complete upon the agreement and the performance of an overt act in furtherance of the agreement. The overt act need not rise to the level of a substantial step required for an attempt to commit the felony. A defendant may therefore be convicted of a conspiracy to commit a felony without committing the felony and without even an attempt to commit it.

9

The overt act in furtherance of a conspiracy to deal a controlled substance often also supports a dealing conviction. But an overt act that supports a conspiracy conviction may fall short of the possession, manufacturing, or delivery of a controlled substance necessary for the underlying offense. Because conspiracy to deal is a separate offense and is not listed along with dealing among the nonsuspendable offenses, *Huff* held that conspiracy to deal is not nonsuspendable under I.C. 35-50-2-2. We agree and find the same reasoning applicable here. More generally, conspiracy was viewed as a lesser crime at common law, and most jurisdictions punish a conspiracy less severely than the target offense. Penal laws are to be construed strictly. We therefore cannot equate conspiracy to deal with the dealing offenses found in Subsection 8(b)(3)(C). In sum, we hold that a conviction for conspiracy to deal is not the same as a conviction for dealing for purposes of the general habitual offender enhancement statute found in I.C. 35-50-2-8.

(internal quotations, citations, and parentheticals omitted). Applying that rationale, we conclude that Humphreys could be adjudicated an habitual offender because he was convicted of conspiracy to manufacture methamphetamine, which is not a drug offense for purposes of Indiana Code section 35-50-2-8(b)(3).

However, an examination of the trial court's sentencing statement leads us to the conclusion that the trial court erred by treating the habitual offender adjudication as a separate crime for which a separate sentence could be imposed. The trial court sentenced Humphreys to a term of twenty years for his conspiracy to manufacture methamphetamine conviction, twenty years for his dealing in methamphetamine conviction, three years for his illegal drug lab conviction, and "a period of sixteen (16) [years] for the crime of Habitual Offender, as charged in Count IV, a sentence enhancement." *Appellant's App.* at 258. The sentencing statement further provided that "Counts I, II, and III of said sentences of imprisonment shall run concurrently for a total sentence of thirty-six (36) years." *Id.*

Our Supreme Court has stated the following about habitual offender adjudications:

10

> A habitual offender finding does not constitute a separate crime nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony. In the event of simultaneous multiple felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the conviction to be so enhanced.

*Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997) (internal citations omitted).

Here, the trial court adjudicated Humphreys to be an habitual offender and determined the sentence to be imposed, sixteen years, but failed to specify which felony conviction was to be enhanced by this penalty enhancement. Therefore, we reverse this portion of the trial court's sentencing statement and remand with instructions that the trial court shall specify which of Humphreys's sentences is enhanced by the habitual offender adjudication.

Humphreys claims that the trial court erred by entering judgment of conviction and sentencing him for dealing in methamphetamine and illegal drug lab because they violate double jeopardy principles under the Indiana Constitution. He claims that his illegal drug lab conviction, which is established by the possession of precursors, must be vacated because it is a lesser-included offense of dealing in methamphetamine.

The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, §14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of

11

another challenged offense." 717 N.E.2d at 49 (emphasis in original). We review whether multiple convictions violate the prohibition against double jeopardy *de novo* as it is a question of law. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

Indiana Code section 35-38-1-6 provides that if a defendant is charged with an offense and an included offense in separate counts and is found guilty of both counts, judgment and sentence may not be entered against the defendant for the included offense. "A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser." *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind. Ct. App. 2002) (citing *Zachary v. State*, 469 N.E.2d 744, 749 (Ind. 1984)). "If each offense is established by proof of an element not contained in the other, Indiana Code section 35-38-1-6 does not preclude conviction and sentence for both offenses." *Id*. at 1017 (quoting *Ingram v. State*, 718 N.E.2d 379, 381 (Ind. 1999)). For purposes of Indiana Code section 35-38-1-6, our review requires a careful examination of the facts and circumstances of each particular case. *Id*.

In the present case, Humphreys was found with completed methamphetamine and various other items used to manufacture methamphetamine. In particular, in proximity to the pole barn, law enforcement officers found a tank containing ammonia, a Coleman fuel can, a glass Ball jar, four HCL generators/plastic bottles that tested positive for hydrochloric gas, crushed pill dough, lithium battery strip remnants, two bottles of heat, plastic tubing, a tool box, folded up aluminum foil with burnt residue, funnels, and an active reactionary vessel containing ammonia. Humphreys had also purchased more than ten grams of

12

pseudoephedrine in a matter of hours. Unlike the factual setting in *Bush v. State*, 772 N.E.2d 1020 (Ind. Ct. App. 2002), where no completed methamphetamine was found, thus requiring one of the convictions to be vacated, in this case, there was evidence of completed methamphetamine and precursors. No double jeopardy violation was found in *Iddings* because there was evidence of completed methamphetamine and precursors that could be used to manufacture more methamphetamine, thereby establishing the commission of two independent offenses. 772 N.E.2d at 1017. Consequently, there is no double jeopardy violation by the trial court's entry of judgment of conviction and sentence for dealing in methamphetamine and illegal drug lab, as there was evidence that Humphreys had committed both offenses.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and MAY, J., concur.