**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**TIMOTHY J. LEMON**
Knox, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 04 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID J. HEINEMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1310-CR-409 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy Davis, Judge
Cause No. 02D06-1302-FA-4

**September 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

David Heineman was convicted after a jury trial of six counts relating to the manufacture of, dealing in, and possession of methamphetamine. He raises three issues for our review: (1) whether there was sufficient evidence to convict him of dealing in methamphetamine; (2) whether his convictions for dealing in methamphetamine and possession of precursors with the intent to manufacture methamphetamine violates Indiana's prohibition against double jeopardy; and (3) whether he received effective assistance of trial counsel. Concluding there was sufficient evidence, the convictions did not violate double jeopardy, and trial counsel was not ineffective, we affirm.

## Facts and Procedural History

In February 2013, Detective Jeremy Ormiston worked undercover in the Fort Wayne Police Department narcotics division. Detective Ormiston received a tip from an informant that led him to set up surveillance of both the informant and Heineman. The information Detective Ormiston gathered led another detective to seek and obtain a search warrant for Heineman's apartment, which was across the street from an elementary school. On February 7, the police executed the search warrant, and the meth lab team and emergency services team were on site with decontamination equipment. The Fort Wayne Police Department's protocol upon discovering a meth lab is to secure and destroy most evidence recovered because it is volatile, contaminative, and chemical in nature; the police therefore do field-testing on some objects and take photographs of the evidence recovered prior to its destruction.

When the police executed the warrant, Heineman was the only person in the apartment. He was also the only tenant, according to the landlord. Police recovered the following items consistent with the presence, manufacture, or use of methamphetamine from the apartment and the trash bags on Heineman's balcony immediately outside the apartment: plastic bags, used coffee filters with blue-green residue, empty salt containers, a torn package of pseudoephedrine, empty blister packs of pseudoephedrine, multiple receipts for purchase of pseudoephedrine, disintegrated plastic bottles, aluminum foil with burnt residue, aluminum foil "boats," tubing, a lighter, lithium batteries, organic solvent, and butane fuel. Also in the trash can was a soda bottle which contained residue consistent with a completed one pot meth lab. The officers field-tested some of the evidence, including a fuel can that was labeled "grease from stove," and the test results were consistent with the one pot method of manufacturing methamphetamine. A few pieces of evidence were preserved and provided to the Indiana State Police Laboratory, and they subsequently tested positive for the presence of methamphetamine. The officers also found a one pot meth lab contained within a soda bottle inside the freezer.

While the police searched the apartment, Detective Robert Kirby interviewed Heineman outside. Heineman admitted to purchasing the pseudoephedrine, but stated he only sold it to others. He denied that anyone had ever manufactured methamphetamine in his apartment.

The State charged Heineman on February 13, 2013 with: Count I – dealing in methamphetamine, a Class A felony; Count II – possession of methamphetamine, a Class B felony; Count III – possession of chemical reagents or precursors with intent to

manufacture, a Class C felony; Count IV – possession of a controlled substance, a Class D felony; Count V – maintaining a common nuisance, a Class D felony; Count VI – possession of paraphernalia, a Class A misdemeanor.  After a jury trial, Heineman was found guilty of all counts, and was sentenced to thirty-five years in the Indiana Department of Correction for Count I, with five years suspended; ten years for Count II; five years for Count III; two years and 183 days each for Counts IV and V; and one year for Count VI.  The sentences were to run concurrently.  Heineman filed a motion to correct error on September 23, 2013, which was denied two days later.  Heineman now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

### I. Sufficiency of Evidence

### A. Standard of Review

Our standard of review for sufficiency of evidence claims is well settled.  We neither reweigh the evidence nor judge the credibility of witnesses.  Tharp v. State, 942 N.E.2d 814, 816 (Ind. 2011).  "We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt."  Id. (quotation omitted).

### B. Evidence of Dealing in Methamphetamine

Heineman contends there was insufficient evidence to convict him of dealing in methamphetamine.  To prove Heineman committed Class A felony dealing in methamphetamine, the State was required to prove beyond a reasonable doubt Heineman knowingly or intentionally manufactured methamphetamine on or within 1,000 feet of

school property. Ind. Code § 35-48-4-1.1(b)(3)(B)(i) (2013). Heineman argues there was insufficient evidence he actually or constructively possessed any of the precursors that were found in the apartment or in the trash bags immediately outside and there was no evidence of his intent.

Two types of possession may support a conviction: actual possession or constructive possession. Washington v. State, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009), trans. denied. Actual possession occurs when a person has direct physical control over contraband. Grim v. State, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003). Constructive possession occurs when an individual has both the intent and capability to maintain dominion and control over the contraband. Lampkins v. State, 685 N.E.2d 698, 699 (Ind. 1997).

Knowledge is the key to proving intent: "This knowledge may be inferred from either the exclusive dominion and control over the premise [sic] containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." Grim, 797 N.E.2d at 831 (citing Woods v. State, 471 N.E.2d 691, 694 (Ind. 1984)). Additional circumstances include: 1) incriminating statements made by the defendant; 2) attempted flight or furtive gestures; 3) a drug manufacturing setting; 4) proximity of the defendant to the drugs; 5) drugs in plain view; and 6) drugs in close proximity to items owned by the defendant. Allen v. State, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003).

The capability to maintain control and dominion over times may adequately be shown by proof of a possessory interest in the premises. Davenport v. State, 464 N.E.2d 1302, 1307 (Ind. 1984), cert. denied, 469 U.S. 1043 (1984). Actual ownership of the premises is not required. Allen, 798 N.E.2d at 501.

Heineman argues he did not have exclusive control and dominion over the apartment because the landlord had a key and others had been in his apartment previously, and therefore he did not intentionally possess the items. The evidence suggests otherwise. Heineman was the only resident of the apartment, and he was the only person in the apartment at the time the search warrant was executed. The landlord had never been in Heineman's apartment unaccompanied while he lived there. The apartment was a drug manufacturing setting, which was especially evident from the one pot meth lab in the freezer. Several of the items were also found in plain view. All of the possessions within the apartment were Heineman's; those possessions, in turn, were in close proximity to and comingled with precursors. These circumstances point to Heineman's knowledge and intent to deal methamphetamine. His capability to maintain control and dominion over the apartment is shown by his possessory interest in the apartment. The evidence is sufficient to sustain Heineman's conviction under this count.

## II. Double Jeopardy

### A. Standard of Review

Heineman next argues that his convictions for both dealing in methamphetamine and possession of precursors with the intent to manufacture methamphetamine violates Article 1, Section 14 of the Indiana Constitution's prohibition against double jeopardy.

The State's argument on this point fails to meet Heineman's argument. The State analyzes the double jeopardy claim by comparing Indiana Code section 35-48-4-2(a)(1) (2013)- dealing in a schedule I, II, or III controlled substance with Indiana Code section 35-48-4-14.5(b) (2013)- possession of chemical reagents or precursors with intent to manufacture controlled substances. Heineman was not convicted under either of these statutes. Rather, Heinman challenges his convictions under Indiana Code Section 35-48-4-1.1 (2013) - Dealing in methamphetamine and Indiana Code section 35-48-4-14.5(e) (2013) - Possession of chemical reagents or precursors with intent to manufacture controlled substances.[1] We find the State's lack of appropriate argument on this point akin to the failure to file a brief. Therefore, Heinenman is "entitled to reversal upon a showing of prima facie error, or error that is evident at first sight, on first appearance, or on the face of it." Bruce v. State, 749 N.E.2d 587, 591 (Ind. Ct. App. 2001), trans. denied.

### B. Double Jeopardy

Article 1, Section 14 provides: "No person shall be put in jeopardy twice for the same offense." Our double jeopardy analysis involves two inquiries which are known as the "statutory elements test" and the "actual evidence test." See Richardson v. State, 717 N.E.2d 32, 50-53 (Ind. 1999). Here, Heineman only challenges his convictions based on the actual evidence test.

> Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. To find a double jeopardy violation under this

---

[1] Though the appendix does not include the charging information, the court's final jury instructions included the statutory language of the charged crimes. Transcript at 273-76. It is through these jury instructions that we were able to determine what crimes the State alleged Heineman committed, and what crimes the jury found Heineman guilty of.

test, we must conclude that there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The actual evidence test is applied to all the elements of both offenses. In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

Garrett v. State, 992 N.E.2d 710, 719 (Ind. 2013) (citations and quotations omitted).

Heineman relies on Iddings v. State, 772 N.E.2d 1006 (Ind. Ct. App. 2002), trans. denied, and Bush v. State, 772 N.E.2d 1020 (Ind. Ct. App. 2002), trans. denied, for the proposition that it is impossible to knowingly or intentionally manufacture methamphetamine without first possessing the chemical precursors to manufacture the drug. Iddings, 772 N.E.2d at 1016. We agree with this proposition. We also agree with the next conclusion in Iddings:

The sole practical difference between these two offenses is that one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine.

772 N.E.2d at 1016-17. In Iddings, we concluded there was sufficient independent evidence that Iddings had committed two crimes because there was evidence he 1) had already manufactured methamphetamine and 2) possessed chemical precursors to create more of the drug. Id. at 1017. Conversely, we concluded in Bush the same evidence was used for the basis of his conviction for manufacturing methamphetamine and his conviction for possessing the precursors where the evidence suggested Bush was in the process of manufacturing methamphetamine but had not yet completed the process. 772 N.E.2d at 1024-25. Heineman believes his case is akin to Bush, not Iddings, so his conviction for

possessing precursors must be reversed. Even with our lower standard of review, we disagree.

The evidence presented shows the remnants of two one pot meth labs (the can of grease and the empty soda bottle in the trash can) as well as another one pot lab in the freezer. In addition, there was evidence that Heineman possessed additional unused amounts of lye and organic solvent, both of which are considered chemical reagents or precursors under Indiana Code section 35-48-4-14.5(a). Therefore, there is separate and sufficient evidence to support the convictions for dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture, as the evidence showed 1) he had already manufactured methamphetamine and 2) he possessed chemical reagents or precursors to create more of the drug. See Iddings, 772 N.E.2d at 1017.

### III. Ineffective Assistance of Counsel

#### A. Standard of Review

Lastly, Heineman raises a claim of ineffective assistance of trial counsel. This claim may be raised on direct appeal or in post-conviction proceedings. Jewell v. State, 887 N.E.2d 939, 941 (Ind. 2008). When raised on direct appeal, the claims may address error established in the record of proceedings through trial and judgment, but the defendant generally may not offer new evidence not previously presented at trial. Id.

Whether trial counsel offered effective assistance to a defendant is determined by a two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). We must assess whether counsel's performance was deficient and whether the defendant was prejudiced as a result of the deficient performance. Id. at 687. "A deficient performance

is that which falls below an objective standard of reasonableness. Prejudice exists when there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citations and quotations omitted). We will not second-guess the propriety of trial counsel's tactics or strategy. Lowery v. State, 640 N.E.2d 1031, 1041 (Ind. 1994), cert. denied, 516 U.S. 992 (1995).

## B. Effectiveness of Trial Counsel

Here, Heineman argues that counsel made several errors that standing alone might not establish ineffective assistance, but taken as a whole prove ineffective assistance. Those errors include opening the door to inadmissible testimony, being reprimanded by the judge, expressing a desire to be finished with the trial in one day, not asking particular questions of the landlord, not offering certain evidence, and not objecting "to the fact that no lab results were presented to show if methamphetamine was found in the apartment" and not objecting to the fact "no samples were taken to determine if methamphetamine was found or if there was an active meth lab in the apartment." Brief of Appellant at 12. Additionally, Heineman challenges trial counsel's comment during opening statement where he said, "Well, after listening to all of that, let's just go home and find him guilty." Transcript at 47.

Here, we find no deficient performance on the part of counsel. Heineman's arguments largely revolve around why trial counsel did or did not pursue a particular strategy or tactic. Heineman points us to only one instance where counsel opened the door to testimony; counsel was aware he opened the door as evidenced by his sidebar with the

10

State and court, and he offered a reason for pursuing that line of questioning. We will not second-guess counsel's tactics in pursing this line of questioning. We also will not second-guess trial counsel's strategy regarding the questions he did or did not ask of Heineman's landlord, why he did not object to evidence that was not offered, and why he did not offer potential evidence.[2] Regarding counsel's stated desire to conclude the trial in one day due to his obligation in another court the next day, that statement was made outside the presence of the jury and was part of a general discussion between the court and both sides to discuss how much longer they expected the proceedings to take. There was no deficiency on counsel's part for having this conversation with the court. Finally, counsel's statement during opening arguments of, "Well, after listening to all of that, let's just go home and find him guilty," id., must be read in context. His next sentence was, "You know, that's not the way it works here in America. Because it's still the State's burden of proving each and every essential element of the six crimes my client has been charged with beyond a reasonable doubt. And I submit to you, ladies and gentlemen of the jury, that upon-after hearing all the evidence, the shield of innocence that's protected and guaranteed by the United States Constitution and the State of Indiana Constitution will not come down." Id. Again, this is another strategy decision we will not question. We find no deficiency in, and in turn no prejudice flowing from, trial counsel's performance.

---

[2] Heineman alleges defense counsel should have offered a cleaning report from the apartment which showed no methamphetamine was present at the home after the police executed the search warrant. We do not know if such an item existed, as it was not part of the trial record and is not part of the record on appeal.

<u>Conclusion</u>

Concluding the evidence was sufficient, the prohibition against double jeopardy was not violated, and Heineman did not receive ineffective assistance of trial counsel, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.